UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ANGENETTE SANDERFER,

Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security,

Defendant.

No.: 4:14-CV-5032-EFS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are cross-summary-judgment motions. ECF Nos. 21 & 26. Plaintiff Angenette Sanderfer appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 21. Ms. Sanderfer contends the ALJ erred because she 1) failed to properly evaluate the medical opinion evidence, 2) improperly rejected Ms. Sanderfer's subjective complaints about her symptoms, and 3) failed to properly consider all of Ms. Sanderfer's impairments when determining her functional limitations. ECF No. 21 at 1. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Ms. Sanderfer is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. ECF No. 26 at 1. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court denies Plaintiff's

Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

**A. Statement of Facts**[1]

Ms. Sanderfer was born in 1968. Transcript of admin. hrg. ("Tr.") at 176. She has a high school education and is able to communicate in English. Tr. at 22. She is five feet, five inches tall and weighs over 250 pounds. Tr. at 18. Ms. Sanderfer has been diagnosed with chronic back pain, asthma, obesity, major depressive disorder, moderate generalized anxiety disorder, and ADHD. Tr. 301, 304-346, & 348-370. She has had two surgeries on her right knee, with the most recent occurring in 2007. Tr. 40, 44, 50-51, 213. After the surgeries, she started experiencing chronic pain and was subsequently diagnosed with fibromyalgia. *Id.* Ms. Sanderfer has a goiter but her thyroids function normally and her complete metabolic panel was within normal limits. *Id.* at 13. She also suffers from mild leg edema. *Id.*

According to Ms. Sanderfer's own testimony, it hurts to do anything and everything. Tr. at 16. She is allegedly in constant pain and feels tired and exhausted all of the time. She states that there are days where she is in bed all day long and her pain is worse whenever it rains or snows. *Id.* at 17. Her condition affects lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearings, stair climbing, seeing, memory, completing tasks, concentration, using her hands, and getting along with others. *Id.* at 16-17. She states that her

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

lack of concentration has gotten worse and that she forgets to do the things she needs to do to take care of her personal needs. Tr. at 16. Her muscles never relax so her whole body is exhausted. She claims she is unable to go for walks or do housework. *Id.* Apparently she attempted to return to school in 2012, but stopped going due to her pain, lack of concentration, anxiety, and depression. *Id.* at 17. She smokes cigarettes and marijuana everyday despite repeated admonitions by her healthcare provider to stop. Tr. at 18 & 310. Some of her pain has been attributed to enlarged mammaries. Tr. at 18. A pain specialist recommended surgical intervention. *Id.* However, the surgeon Ms. Sanderfer consulted with required her to weigh 185 pounds or less before he would do the surgery. *Id.* As of the most recent records, Ms. Sanderfer has not lost weight. *Id.*

Ms. Sanderfer has a notable employment history. ECF No. 21 at 2; Tr. at 21. Most recently she worked as a care provider but was fired "due to side effects from her fibromyalgia medication." ECF No. 21 at 2; Tr. at 21. Apparently, while taking Lyrica for her pain, she "snapped off on her client." *Id.* She has also worked as a cashier, a hotel desk clerk, a home attendant, and a babysitter. Tr. at 21.

Despite her stated excessive pain, Ms. Sanderfer takes care of her children, prepares meals daily, does the laundry, cleans the house, and gets around when necessary. She is able to shop, go to the store, and handle money. She goes to church on a regular basis and sometimes spends time with others. She does not need to be reminded to go places and she doesn't require assistance when doing so.

/

**B. Procedural History**

On October 11, 2011, Ms. Sanderfer applied for supplemental security income alleging a number of physical disabilities. Tr. at 172-182. Her alleged onset date is December 31, 2008. *Id.*

On March 14, 2011, Ms. Sanderfer's claim was denied. Tr. at 11. On May 16, 2011, reconsideration was denied. *Id.* On September 11, 2012, an administrative hearing was held before ALJ Caroline Siderius at which Ms. Sanderfer and an independent vocational expert, Jinnie Lawson, both testified. Tr. 34-59. Ms. Sanderfer was represented by Mr. Bradford D. Myler. Tr. at 11. The ALJ determined that Ms. Sanderfer has the severe impairments of arthritis; degenerative joint diseases, right knee; asthma; fibromyalgia; obesity; and depression. Tr. at 13. The ALJ proceeded to find that Ms. Sanderfer's impairments do not meet or medically equal the severity of any listed impairments. Tr. at 14.

Despite her impairments, the ALJ ultimately found that Ms. Sanderfer has the residual functional capacity to perform sedentary work as defined, except that she cannot climb ladders, ropes, or scaffolds; must avoid exposure to odors, dusts, gases, and fumes; must avoid extreme temperatures; may have only superficial contact with the general public and occasional contact with coworkers; can do no more than one to three step tasks; needs a moderate level of supervision; cannot perform any detailed work; can have only occasional changes to her work setting; and can have no more than ordinary production requirements. Tr. at 16.

Based on this assessment, which was presented to the vocational expert, and based on Ms. Sanderfer's age, education, work experience, and residual functional capacity, the ALJ concluded Ms. Sanderfer can

perform jobs that exist in significant numbers in the national economy, such as document preparer and escort vehicle driver, and is therefore not disabled as defined by the Social Security Act. Tr. at 22.

The Appeals Council denied review of the ALJ’s decision. Tr. at 1-7. Thereafter, Ms. Sanderfer filed this lawsuit, appealing the ALJ’s decision. ECF No. 1. The parties then filed the instant summary-judgment motions. ECF Nos. 21 & 26.

**C. Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past. This includes determining the claimant’s residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if she establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a “significant number of jobs exist in the national economy” which the claimant can perform. *Kail v. Heckler*, 722

F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D. Standard of Review**

On review, the court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293

(9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E. Analysis**

Ms. Sanderfer contends that the ALJ erred in three respects: 1) that she failed to properly evaluate the medical opinion evidence, 2) that she improperly rejected Ms. Sanderfer's subjective complaints about her symptoms, and 3) that she failed to properly consider all of Ms. Sanderfer's impairments when determining her functional limitations. The Court addresses each in turn.

**1. Medical Opinion Evidence**

There are three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* The ALJ must provide "clear and convincing" reasons for rejecting a treating or examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Id.* Ms. Sanderfer argues the ALJ improperly rejected the opinions of her three medical experts: Dr. Jesus Marcelo, M.D., Ms. Marci Miller-Pilsbury, M.Ed., and Kishore Varada, PA-C. The Court analyzes the ALJ decision as to each medical expert.

**a. Dr. Jesus Marcelo, M.D.**

Ms. Sanderfer argues that the ALJ improperly rejected the opinion of Dr. Marcelo. Dr. Marcelo is Ms. Sanderfer's treating physician. Tr.

at 252-53. As such, his opinion should ordinarily be given the most weight. In fact, in order to reject or give less weight to Dr. Marcelo's opinion, the ALJ must provide clear and convincing reasons for rejecting a treating or examining physician's opinions and may not reject such opinions without providing specific and legitimate reasons supported by substantial evidence in the record for so doing. *Id.* The Court finds that the ALJ met this standard and did not improperly evaluate Dr. Marcelo's opinion.

Dr. Marcelo has treated Ms. Sanderfer since 2008. ECF No. 21 at 6. On January 28, 2011, Dr. Marcelo completed a "Residual Functional Capacity Questionnaire." Tr. at 252. In that document, Dr. Marcelo diagnosed Ms. Sanderfer with fibromyalgia, chronic back pain, and asthma, with a prognosis of "fair." *Id.* He indicated that Ms. Sanderfer's symptoms "frequently" interfere with attention and concentration required to perform simple work related tasks. *Id.* When asked if Ms. Sanderfer would need to lie down during a hypothetical work day in excess of the typical 15-minute breaks and 30-minute lunch, Dr. Marcelo checked "yes." *Id.* He further indicated that she couldn't walk more than one city block and that she cannot sit or stand for more than 15-20 minutes at a time. *Id.* He also believed that she could not sit or stand for more than 3-4 hours in a full work day and that she would need to miss three days a month due to her impairments. *Id.* at 253. Finally, Dr. Marcelo noted that Ms. Sanderfer's asthma that can sometimes exacerbate to the point where a hospital visit is necessary. *Id.*

The ALJ gave "little weight" to this evaluation finding that it was "inconsistent with [Dr. Marcelo's] own treatment records where he

apparently relied quite heavily on her subjective complaints." *Id.* at 21. The ALJ also pointed out that Dr. Marcelo indicated in his notes that Ms. Sanderfer's asthma is stable and has not had any recent exacerbations. *Id.* Furthermore, according to the ALJ, Dr. Marcelo's treatment records show that Ms. Sanderfer's physical examinations are "unremarkable" with the exception of noting 17 or 18 tender points in December 2010. It should be noted, that the ALJ did not "reject" Dr. Marcelo's decision but instead gave it "little weight." It was still considered in determining Ms. Sanderfer's residual functional capacity. Tr. at 21.

After reviewing the ALJ's decision, Dr. Marcelo's treatment records, and the briefing of the parties, the Court finds that the ALJ met her burden and provided clear and convincing reasons for rejecting a treating or examining physician's opinions and did not reject such opinions without providing specific and legitimate reasons supported by substantial evidence in the record for so doing. Specifically, the Court agrees that Dr. Marcelo's records are inconsistent with the severity of Ms. Sanderfer's symptoms as described in Dr. Marcelo's RFC Questionnaire. *See*, *e.g.*, Tr. at 310 ("Her fibromyalgia is a little bit worse. . . . we have increased her [medication] and this is helping her with sleeping as well as some of the body aches and pains . . . ."); Tr. at 314 ("Asthma, stable. Advised about avoidance of smoking as well as marijuana use. . . . Inform us if she is using her Albuterol more than 2-3 times per week."); Tr. at 321 ("She has noticed that her fibromyalgia pain is really responding well to Amitripyline . . . patient said that she has been having a little bit more energy and less

pain."); Tr. at 321. ("[P]atient will have no difficulty maintaining a safe and constructive classroom environment."); Tr. at ("She said that she had been on a road trip that started last Thursday and came back Friday. The trip was about four hours so she had some frequent stops to stretch her legs.").

The Court acknowledges Ms. Sanderfer's argument and agrees that fibromyalgia "is a common and complex condition characterized primarily by widespread pain." ECF No. 21 at 8. The Court further acknowledges that symptoms of this disease can "wax and wane" so that a person can have good days and bad days. *Id.* at 10. However, the severity of Ms. Sanderfer's symptoms, as described in the RFC Questionnaire filled out by Dr. Marcelo, are simply inconsistent with the rest of his treatment records. The ALJ pointed to these inconsistencies, as well as the fact that many of those records relied on Ms. Sanderfer's subject complaints, and chose to give "less weight" to Dr. Marcelo's opinion as stated in the RFC Questionnaire. Tr. at 21. In doing so, the ALJ provided clear and convincing reasons for rejecting a treating or examining physician's opinions and did not reject those opinions without providing specific and legitimate reasons supported by substantial evidence in the record for so doing. Therefore, the Court finds that the ALJ did not improperly weigh the opinion of Dr. Marcelo.

**b. Marci Miller-Pilsbury, M.Ed.**

The ALJ also gave "little weight" to the opinion of Ms. Marci Miller-Pilsbury, M.Ed. On October 20, 2011, Ms. Miller-Pilsbury filled out a "check-the-box" mental capacity assessment diagnosing Ms. Sanderfer with fibromyalgia, ADHD, MDD – Recurrent, and GAD, which would

hinder her ability to maintain attention and concentration for extended periods, to complete a normal workday, to complete a normal workweek, to perform at a consistent pace, and to accept instructions and respond to criticism, all at "marked" levels. Tr. at 302. Ms. Miller-Pilsbury specifically noted that Ms. Sanderfer has problems with "anxiety, focus/concentrations, and pain," which cause irritability and frustration dealing with stressors in a public setting. Tr. at 303.

The ALJ gave little weight to Ms. Miller-Pilsbury's opinions as to Ms. Sanderfer's mental capacity. Tr. at 21. It is again important to note that the ALJ did not reject or disregard Ms. Miller-Pilsbury's opinion but simply gave them less weight. "[O]nly licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotes omitted). Ms. Miller-Pilsbury is not considered an "acceptable medical source" under the Social Security Code or Ninth Circuit case law. *Id.*; 20 C.F.R. § 404.1513. Even still, the observations of sources such as Ms. Miller-Pilsbury must be considered. SSR 60-03p.

The ALJ granted little weight to Ms. Miller-Pilsbury's opinion because it did not correlate with the "relatively benign counseling records." Tr. at 21. The ALJ further pointed out that in those records, "the claimant is otherwise describe as alert and oriented times four, fully focused, intact memory, and in no apparent distress." *Id.* While the ALJ's analysis of Ms. Miller-Pilsbury's opinion is not lengthy, it is supported by the evidence. *See*, *e.g.*, Tr. at 304 ("She has had bouts of depression in the past, but states she hasn't had continuing low mood

for some time.”); *Id.* (“She is attending college online in hopes of being better able to provide for her family.”); Tr. at 307 (“[M]anages to complete her activities of daily living.”); Tr. at 304 (“She states she has been productive at home and is feeling good about that.”); Tr. at 352 (discussing how her pain and “slowness” is the result of a recent surgery and not from her fibromyalgia); Tr. at 354 (“Angie is doing relatively well, in spite of current medical concerns. She is tending to her activities of daily living and caring for her sons despite pain and anxiety. Her focus and concentration appear to be less of a problem at this time.”); Tr. at 360 (“She states she has been feeling somewhat better and helped with a banquet earlier this week. She has been cooking and feeling good about that.”).

The Court is sensitive to the fact that Ms. Sanderfer has good days and bad days when it comes to her psychological impairments and that much of this is determined by changing life circumstances. ECF No. 14-15. However, the Court cannot reverse or find fault in the ALJ’s decision to give little weight to Ms. Miller-Pilsbury’s opinion. The ALJ did not fail to provide clear and convincing reasons for giving less weight to her opinion nor did she do so without providing specific and legitimate reasons supported by substantial evidence in the record for so doing. Substantial evidence “means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Astrue*, 674 F.3d at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). In this case, because there is enough relevant evidence for a reasonable mind to accept the ALJ’s conclusion, there is “substantial evidence” in the record to support the

ALJ's decision. Therefore, the Court finds that the ALJ did not err in giving less weight to Ms. Miller-Pilsbury's opinion.

**c. Kishore Varada, PAC**

Ms. Sanderfer contends the ALJ erred in giving less weight to the opinion of Kishore Varada, PA-C. On October 21, 2011, PA-C Varada filled out a residual functional capacity questionnaire. In that assessment, PA-C Varada diagnosed Ms. Sanderfer with three mental health impairments and no physical impairments: major depressive disorder, recurrent; ADHD; and generalized anxiety disorder. Tr. at 299. The symptoms listed were depression, anxiety, chronic pain, and trouble with focus and concentration. *Id.* Due to these alleged mental health impairments, PA-C Varada indicated that Ms. Sanderfer would not be able to stand or walk for more than 15 minutes at a time. She also wouldn't be able to sit for more than four hours in an eight hour workday. She would need to take an unscheduled break every hour. She would never be able to lift more than ten pounds and she had only ten percent use of her arms in the "reaching" category. Tr. at 300.

The ALJ gave less weight to PA-C Varada's opinion because PA-C Varada is not considered an "acceptable medical source" and because "treatment notes do not correlate with these assessed limitations." The ALJ pointed out that medical records indicate that Ms. Sanderfer was described "as alert and oriented to person, place, date, and situation, in no apparent distress, well-groomed, mood was with affect, fully focused and memory intact." Ms. Sanderfer argues that as a treating physician's assistant, PA-C Varada is entitled to some weight and that

the description used by the ALJ is contradicted by the rest of the medical records.

"[O]nly licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotes omitted). Physician's assistants are defined as "other sources," and are not entitled to the same deference as acceptable medical sources. *Id.* The ALJ may discount testimony from these "other sources" if the ALJ "gives reasons germane to each witness for doing so." *Astrue*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

In this case, PA-C Varada's opinion is entitled to some weight as an "other source." However, PA-C Varada's opinion should be given less weight than a treating medical source would be given. And, in fact, this is what the ALJ did. The ALJ did not reject PA-C Varada's opinion but simply gave it little weight. Tr. at 21. Furthermore, the ALJ did not err in giving PA-C Varada's opinion less weight than an "other source" would typically receive because the ALJ gave "germane reasons" for discrediting PA-C Varada's opinion. Tr. at 21. The Court finds that the ALJ did not err in giving "less weight" to PA-C Varada's opinion.

**2. Ms. Sanderfer's Subjective Complaints**

Ms. Sanderfer contends the ALJ improperly found her statements concerning the intensity, persistence and limiting effects of her symptoms not credible. ECF No. 21 at 20. A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014

(9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant’s symptom-severity testimony. *Id.* An ALJ is not “required to believe every allegation of disabling pain” or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief. *Id.* Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *Id.*

In this case, the ALJ found “claimant’s medically determinable impairments could reasonably be expected to cause the alleged symptoms,” satisfying the first part of the analysis. Tr. at 17. “[C]laimant’s statements concerning the intensity, persistence and limiting effects of the symptoms,” however, were found to be “not credible.” *Id.* The ALJ

then went on for many pages in her opinion describing in great detail Ms. Sanderfer’s medical history, the opinions of her medical examiners, the inconsistencies between her alleged symptoms and her daily activities, and her failure to follow the advice of her physicians.

As to the inconsistencies between her alleged symptoms and her daily activities, Ms. Sanderfer claims that it hurts to do anything and everything. Tr. at 16. She states that she is in constant daily pain and feels tired and exhausted all the time. She claims there are days when she has to stay in bed all day long. As previously discussed, however, Ms. Sanderfer takes care of her children, prepares meals daily, does the laundry, cleans the house, and gets around when necessary. She is able to shop, go to the store, and handle money. She goes to church on a regular basis and sometimes spends time with others. She does not need to be reminded to go places and she doesn’t require assistance when doing so. There is some disconnect between Ms. Sanderfer’s testimony to her symptom severity and her daily activities.

As to her failure to follow a prescribed course of treatment, all of her medical and psychological treatment providers, even the ones the ALJ gave little weight to, recommend that Ms. Sanderfer stop smoking cigarettes, stop smoking marijuana, and lose weight so that she can have surgery. Much of her pain has been attributed to enlarged mammaries, which could be fixed with surgery if she would lose weight. Additionally, many of the symptoms attributed to her respiratory impairments, such as her asthma, would at least partially subside if she were to follow the instructions of her physicians.

The ALJ found Ms. Sanderfer's testimony regarding the intensity, persistence and limiting effects of her symptoms "not credible." The ALJ discussed at length how Ms. Sanderfer's medical history, her daily activities, and her failure to follow through on prescribed treatment, do not support the severity of her symptoms. Therefore, the Court finds that the ALJ did not err in finding Ms. Sanderfer's subject testimony regarding the intensity, persistence and limiting effects of her symptoms not credible.

**3. Specific Jobs in the National Economy**

Ms. Sanderfer contends that the ALJ erred in finding that there are jobs that exits in significant numbers in the national economy because the ALJ's Residual Functional Capacity ("RFC") assessment did not account for the full extent of Ms. Sanderfer's impairments and limitations. ECF No. 21 at 28. Specifically, Ms. Sanderfer contends that the ALJ did not include impairments that physicians had diagnosed her as having, did not include limitations that certain medical treatment providers described her as having, and did not properly consider Ms. Sanderfer's symptoms. *Id.* at 29. As to the ALJ's alleged failure to include certain impairments and functional limitations, each of the alleged omissions were included in the assessments of medical treatment providers who, as previously discussed, were appropriately given little weight. As to the ALJ's alleged failure to consider Ms. Sanderfer's fibromyalgia symptoms, as the Court previously found, the ALJ did not err in finding Ms. Sanderfer's symptom-severity testimony less than credible and, therefore, did not err in not including those functional limitations in her RFC.

**C. Conclusion**

The ALJ did not err by giving the opinions of certain medical and mental health care providers less weight, or by finding Ms. Sanderfer's symptom-severity testimony not credible, or by not including certain impairments and symptoms in determining Ms. Sanderfer's RFC. Therefore, the Court denies Ms. Sanderfer's Motion for Summary Judgement and grants the Commissioner's motion for summary judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1. Ms. Sanderfer's Motion for Summary Judgment, **ECF No. 21**, is **DENIED.**
2. The Commissioner's Motion for Summary Judgment, **ECF No. 26**, is **GRANTED.**
3. The Clerk's Office is ordered to enter **JUDGMENT** in favor of the Commissioner.
4. The case shall be **CLOSED.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel.

**DATED** this 27th day of July 2016.

_____s/Edward F. Shea ___
EDWARD F. SHEA
Senior United States District Judge